IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**FANNIE MARIE HAWKINS**                                                         **PLAINTIFF**

V.                                                 **CIVIL ACTION NO. 3:20CV183 KHJ-LGI**

**ANDREW SAUL,**
**COMISSIONER OF SOCIAL SECUIRTY**                                **DEFENDANT**

REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Fannie Hawkins appeals the final decision denying her application for a period of disability and disability insurance benefits ("DIB"). The Commissioner requests an order pursuant to 42 U.S.C. § 405(g), affirming the final decision of the Administrative Law Judge ("ALJ"). Having carefully considered the hearing transcript, the medical records in evidence, and all the applicable law, the undersigned recommends that this matter be affirmed.

In June 2017, Plaintiff filed an application for benefits alleging a disability onset date of March 24, 2017, due to multiple conditions including unspecified back, shoulder, knee, and right foot problems; nerve damage in the left hand and shoulder; migraine headaches; arthritis; diabetes; high blood pressure; and asthma. Plaintiff is a high school graduate and was 59 years old on her alleged onset date, with past work experience as a home attendant, poultry grader, poultry worker, and equipment cleaner. Following agency denials of her application, the ALJ rendered an unfavorable decision finding that

she had not established a disability within the meaning of the Social Security Act. The Appeals Council denied Plaintiff's request for review. She now appeals that decision.

## Factual Background

The relevant medical evidence is detailed in the memorandum briefs and the ALJ's decision and will not be repeated in depth here. As noted *supra*, Plaintiff alleges disability due to multiple impairments. At the administrative hearing, however, she asserted that her most limiting impairments were back pain and migraine headaches, with the latter resulting in a total of 21 medical visits from 2014 through 2016. Though she was able to obtain migraine relief with nerve block injections when she was employed, Plaintiff testified that she has been unable to afford the injections since she stopped working; she now uses heating pads, ice packs, and over-the-counter medication to "dull[] it down." As for her other impairments, Plaintiff testified that she can perform daily activities with assistance, but she is precluded from performing any exertional or postural limitations for prolonged periods of time because of pain. Notably, despite her descriptions of constant unremitting pain, Plaintiff rated her pain level as a 5/10 ***prior*** to taking medications, which include ibuprofen and muscle relaxers.

After considering Plaintiff's testimony and subjective complaints, the ALJ concluded that the objective medical evidence did not establish the loss of functioning to the extent alleged. At step one of the five-step sequential evaluation,[1] the ALJ found that

---

[1] Under C.F.R. § 404.1520, the steps of the sequential evaluation are: (1) Is plaintiff engaged in substantial gainful activity? (2) Does plaintiff have a severe impairment? (3) Does plaintiff's impairment(s) (or combination thereof) meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? (4) Can plaintiff return to prior relevant work? (5) Is there any work in the national economy that plaintiff can perform? *See also McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999).

Plaintiff had not engaged in substantial gainful activity since her alleged onset date. At step two, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease, lumbar spondylosis, lumbar radiculopathy, and scoliosis; however, the ALJ found that Plaintiff's obesity, diabetes mellitus, asthma, hypertension, osteoarthritis of the knees and shoulder, and migraines were non-severe impairments. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled any listing. At step four, the ALJ determined that Plaintiff has the residual functional capacity to perform light work, including her past relevant work as a poultry grader and poultry worker.[2]

## Standard of Review

Judicial review in social security appeals is limited to two basic inquiries: "(1) whether there is substantial evidence in the record to support the [ALJ's] decision; and (2) whether the decision comports with relevant legal standards." *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996) (citing *Carrier v. Sullivan*, 944 F.2d 243, 245 (5th Cir. 1991)). Evidence is substantial if it is "relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance." *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995) (quoting *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992)). This Court may not re-weigh the evidence, try the case *de novo,* or substitute its judgment for that of the ALJ,

---

[2] For social security determination purposes, jobs are classified by physical exertion requirements as sedentary, light, medium, heavy, and very heavy. 20 C.F.R. § 404.1567.

even if it finds evidence that preponderates against the ALJ's decision. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994).

## Discussion

Plaintiff raises two errors on appeal: (1) the ALJ failed to consider the limiting effects of her migraine headaches in determining her residual functional capacity, and (2) the ALJ substituted his lay opinion for that of the medical experts. The Commissioner counters that the proper standards were applied, and substantial evidence supports the ALJ's decision. Given the evidence in this case, the undersigned submits that the Commissioner's decision should be affirmed.

### 1.

As her first point of error, Plaintiff alleges that the ALJ failed to consider the vocational significance of her migraine headaches and occipital neuralgia in determining her residual functional capacity.[3] While the record confirms diagnoses for these impairments, it is neither the presence nor the history of a medical condition that establishes a disability, but rather its limitations. *Bordelon v. Astrue*, 281 F. App'x 418, 422 (5th Cir. 2008) (distinguishing between diagnosed impairments and functional limitations caused by those impairments). At step two of the sequential evaluation, the claimant bears the burden of proving not only that he has been diagnosed with a medically determinable impairment, but that it also affects his ability to do basic work activities. *Brunson v. Astrue*, 387 F. App'x 459, 461 (5th Cir. 2010) (per curiam). The

---

[3] Though Plaintiff identifies two impairments, she focuses her argument primarily on the ALJ's failure to find her migraine headaches were a severe impairment at step two.

4

fact that there may be some contrary evidence to support a severity finding will not undermine an ALJ's step-two determination if it is supported by substantial evidence. *Bayer v. Colvin*, 557 F. App'x 280, 287–288 (5th Cir. 2014). The relevant inquiry is "whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached by the ALJ." *Loza*, 219 F.2d at 393.

In his evaluation of the severity of Plaintiff's impairments at step two here, the ALJ's analysis was as follows:

> In the case of her diabetes mellitus, and hypertension, the record reflects virtually no appreciable abnormalities at all. Migraine complaints have been somewhat more frequent, and to be sure, she has a ***history*** of significant migraine treatment ***prior to the period at issue***. Even so, treatment notes from March 2017 onward generally document infrequent migraine issues that have not been persistent. For these reasons, the undersigned finds that the claimant's obesity, diabetes mellitus, asthma, hypertension, osteoarthritis of the knees and shoulder, and migraines—whether considered individually or in combination with other impairments—have not caused more than minimal limitation of her ability to perform basic work activities for a period of at least 12 consecutive months during the period at issue and they are therefore nonsevere. (emphasis added).

Though not stressed in her initial brief, Plaintiff in rebuttal alleges that the ALJ's analysis is flawed because he failed to apply the severity standard set forth in *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985). Having carefully reviewed the matter, however, the undersigned finds no cause for reversal or remand on this basis.

*Stone* holds that an impairment is not severe "'only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience.'" *Stone*, 752 F.2d at 1101 (internal quotation marks and citation omitted). By comparison,

the ALJ's analysis tracks the language of social security regulations which provides that an "impairment or combination of impairments is 'not severe' when medical and other evidence establish only a slight abnormality or a combination of abnormalities that would have no more than a minimal effect on an individual's ability to work." § 20 C.F.R. 416.921.  The Fifth Circuit has long cautioned, however, that the critical issue at step two is whether the ALJ applied the correct legal standard, not whether she recited "magic words."  *Hampton v. Bowen*, 785 F.2d 1308, 1311 (5th Cir. 1986).  "*Stone* merely reasons that the [severity] regulation cannot be applied to summarily dismiss, without consideration of the remaining steps in the sequential analysis, claims of those whose impairment is more than a slight abnormality." *Loza v. Apfel*, 219 F.3d 378, 391 (5th Cir. 2000) (quoting *Anthony*, 954 F.2d at 294).  Plaintiff's claim was not summarily dismissed here.  After finding at step two that Plaintiff had severe impairments, the ALJ proceeded with the sequential evaluation.

Even if the Court were to find the ALJ's formulation of the severity standard was at odds with *Stone*, any error was harmless.  As set forth herein, the ALJ's non-severity finding is substantially supported by the evidence under either standard.  *Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012); *Charles v. Colvin*, 628 F. App'x 290, 292 (5th Cir. 2016) (applying harmless-error standard when ALJ failed to follow *Stone*) (citing *Taylor*, 706 F.3d at 603)).

For instance, Plaintiff's primary objection to the ALJ's non-severity finding is that he characterized her migraine complaints as infrequent after her onset date.  It is well-established, however, that the frequency of treatment is a relevant factor in determining

the severity of an alleged impairment, and it may be used in conjunction with the medical reports to discount complaints of disabling pain or other limitations. *See Doss v. Barnhart*, 137 F. App'x 689, 690 (5th Cir. 2005); *Griego v. Sullivan*, 940 F.2d 942, 945 (5th Cir. 1991); *McGuire v. Comm'r of Soc. Sec.*, 178 F.3d 1295 (6th Cir. 1999) (gaps in treatment may reasonably be viewed as inconsistent with a claim of debilitating symptoms). Notable here, Plaintiff does not dispute that her migraine complaints were far more frequent prior to her alleged onset date, but she cites to the 7 instances over a 16-month period where she complained to a medical provider after her alleged onset date. The undersigned notes, however, that all but one instance appears to have been mentioned by the ALJ in his severity analysis at step two. Further, as the Commissioner notes, migraine complaints were not the sole or even primary basis for most of these visits.

Plaintiff alleges, nevertheless, that the ALJ disregarded evidence that would have supported a severity finding at step two. She points first to her hearing testimony that she's been "known" to have migraines twenty days out of the month. However, the record does not establish that Plaintiff reported experiencing migraines to this extent alleged after her onset date. Moreover, Plaintiff acknowledged at the administrative hearing that medication, heating pads, and ice packs help to alleviate her symptoms. A medical condition that can be reasonably remedied by surgery, treatment or medication is not disabling. *Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir. 1987).

Second, Plaintiff notes that the agency consultants indicated in their opinion that the "intensity, persistence, and limiting effects of her symptoms of her impairments were

substantiated by the objective medical evidence alone." This portion of the consultants' opinion, however, is inconsistent with their conclusion that Plaintiff could perform medium work. Moreover, the opinion clearly notes that Plaintiff's migraines are "infrequent and managed with injections, and medications."

Third, Plaintiff alleges that the ALJ failed to consider that the lack of migraine treatment was attributable to the fact that she could no longer afford nerve block injections. In support, she cites to the instances in the record where she continued to report migraine headaches after her insurance coverage ceased. "It is true that if a claimant cannot afford the prescribed treatment or medicine, a curable, temporary disability is treated as a permanent one." *Fellows v. Apfel*, 211 F.3d 125 (5th Cir. 2000) (citing *Lovelace*, 813 F.2d at 58). But where there is no evidence of a disabling condition, a claimant's "inability to afford treatment is irrelevant." *Fellows*, 211 F.3d 125; *Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990) ("no record evidence, besides Villa's testimony, that he would be disabled with or without regular medical treatment"). Despite Plaintiff's testimony that she experiences migraines nearly every day, the record does not establish that she reported experiencing them to the extent alleged after her injections ceased. Moreover, by her own admission, medication, heating pads, and ice packs help to alleviate her symptoms.

As noted, this case did not turn on a finding at step two, but on a finding that Plaintiff retained the residual functional capacity to perform work at step four. *Salmond v. Berryhill*, 892 F.3d 812 (5th Cir. 2018); *Taylor*, 706 F.3d at 603; *Dise v. Colvin*, 630 F. App'x 322, 324 (5th Cir. 2015); *Herrera v. Comm'r of Soc. Sec.*, 406 F. App'x 899, 903

(5th Cir. 2010). But given the evidence presented, the undersigned submits that the ALJ's non-severity finding at step two is consistent with both *Stone* and the regulations. Though Plaintiff alleges that the ALJ failed to consider the limiting effects and vocational significance of her migraine headaches in assessing her residual functional capacity, she does not identify any physician of record who assigned such limitations. The mere fact that she may have migraine pain or discomfort while working does not mandate a finding of disability, particularly where substantial evidence indicates that she can work despite being in pain or discomfort, as it does here. *See Epps v. Harris*, 624 F.2d 1267, 1274 (5th Cir. 1980); *Johnson v. Heckler*, 767 F.2d 180, 182 (5th Cir. 1985).

**2.**

In her second claim of error, Plaintiff alleges the ALJ substituted his lay opinion for the medical opinions of record. However, what Plaintiff "characterizes as the ALJ substituting [her] opinion is actually the ALJ properly interpreting the medical evidence to determine [her] capacity for work." *Taylor*, 706 F.3d at 603.

Historically, the opinions of treating physicians have been assigned controlling weight in determining disability, but ALJs have always been free to reject any opinion, in whole or in part, when the evidence supports a contrary conclusion. *Kneeland v. Berryhill*, 850 F.3d 749, 760 (5th Cir. 2017); *Garcia v. Colvin*, 622 F. App'x 405, 410 (5th Cir. 2015); 40 C.F.R. § 404.1527. However, the Social Security Administration revised its regulations in 2017 so that ALJs are no longer required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's]

9

medical sources." 20 C.F.R. § 404.1520c(a) (2017).  Under the new regulations, supportability and consistency of medical opinions are "the most important factors" to be considered when evaluating the persuasiveness of medical opinions.  The ALJ must explain how he "considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings" in his decision. 20 C.F.R. § 404.1520c(b)(2).  But an ALJ is free, upon a showing of good cause, to assign little or no weight to the opinion of any physician when the physician's statements are brief and conclusory, are not supported by medically acceptable clinical laboratory diagnostic techniques or are otherwise unsupported by the evidence.  *Holifield v. Astrue,* 402 F. App'x. 24, 26 (5th Cir. 2010) (citations omitted).

As the Commissioner notes here, Plaintiff alleges that the ALJ "guessed" and "rejected all of the medical opinion evidence," leaving her and this Court "'in the dark' as to the ALJ's reasoning."  However, the Court does not so read the ALJ's decision.  The ALJ's analysis of the expert evidence was as follows:

> As for the opinion evidence, the undersigned notes that the state agency consultants opined that the claimant could perform a range of medium work.[4] While the claimant's acute complaints have been intermittent and exam findings were unremarkable more often than not, the record nonetheless establishes some ongoing spinal issues with radiculopathy. As such, the consultants' assessments are only somewhat persuasive, and a

---

[4] Under the regulations, medium work "involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. § 404.1567. By comparison, light work involves "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." *Id.*

restriction to the light[5] exertional level is more appropriate in light of the evidence set forth above.

The record also reflects an opinion statement from Don Gibson Jr., M.D., the claimant's primary care provider. Dr. Gibson opined that the claimant could lift/carry up to 50 pounds occasionally but no more than 10 pounds frequently; stand/walk for less than 2 hours during a workday; sit for less than 2 hours during a workday; must change positions frequently; experiences substantial postural limitations; has problems with reaching and pushing/pulling; is subject to numerous environmental restrictions; and that she would be absent from work more than 3 times per month. Dr. Gibson's opinion is unpersuasive for several reasons. The claimant's longitudinal treatment records—including Dr. Gibson's primary care records from CHC—usually reflected unremarkable musculoskeletal and neurological findings, with only a few exceptions. The claimant is treated with only conservative modalities, and her most recent imaging showed no major degenerative changes to justify such substantial functional limitations. Moreover, Dr. Gibson's opinion includes internal inconsistencies, e.g., ability to lift/carry up to 50 pounds for up to 1/3 of a workday, but inability to sit/stand/walk for a total of even 4 hours during a workday.

Plaintiff objects to the ALJ's conclusions, but she does not rebut his well-reasoned analysis or good cause with substantial evidence to the contrary.

The sole responsibility for determining a claimant's residual functional capacity rests with the ALJ. The determination is an assessment of a claimant's ability to do work on a sustained basis in an ordinary work setting despite his or her impairments. 20 C.F.R. §§ 404.1545(a), 416.945(a); *Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001). It is an administrative finding of fact, not a medical opinion. Social Security Ruling 96–8p, *Titles II & Xvi: Assessing Residual Functional Capacity in Initial Claims*, SSR 96-8P (S.S.A. July 2, 1996) n. 4). And while "an ALJ may not—without opinions from medical experts—derive the applicant's residual functional capacity based solely on the evidence

or his or her claimed medical conditions," that is not what occurred here. *Williams v. Astrue*, 355 F. App'x 828, 832, n.6 (5th Cir. 2009) (unpub.) (citing *Ripley v. Chater*, 67 F.3d 552, 552, 557 (5th Cir. 1995). The ALJ properly considered the physician opinions of record and credited the limitations that were the most persuasive and consistent with the record as a whole. By reducing the lifting limitations assigned by the state agency consultants and her primary care physician, the ALJ was able to reduce Plaintiff from medium to light work. No medically acceptable clinical or laboratory diagnostic techniques established the existence of impairments which could be reasonably expected to produce the severity of limitations to the degree alleged by Plaintiff or her primary physician. To the contrary, though Plaintiff alleges her impairments preclude her from performing exertional or postural activities for a prolonged period of time, she rated the associated pain at a 5/10 on the pain scale ***before*** she takes medication.[6] For pain to rise to the level of disabling, that pain must be "constant, unremitting, and wholly unresponsive to therapeutic treatment." *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001).

It is ultimately the ALJ's responsibility to interpret "the medical evidence to determine [a claimant's] capacity for work." *Taylor*, 706 F.3d at 603. Absent evidence that Plaintiff's impairments impact her ability to perform work-related activities beyond

---

[6] To the extent Plaintiff contends the ALJ was required to obtain an updated medical opinion, this duty is triggered when the evidence is insufficient to make an informed decision, not a favorable one. *Oderbert v. Barnhart*, 413 F. Supp. 2d 800, 805 (E.D. Tex. 2006).

the limitations indicated in the ALJ's residual functional capacity assessment, the undersigned finds no basis for reversal or remand.

## Conclusion

Based upon consideration of the evidentiary record as a whole, the ALJ determined that Plaintiff failed to establish that her impairments were of sufficient severity to establish disability. The undersigned's review of the record compels a finding that the ALJ applied the correct legal standards and substantial evidence supports the ALJ's decision. For these reasons, it is the opinion of the undersigned United States Magistrate Judge that Defendant's Motion to Affirm the Commissioner's Decision be granted, that Plaintiff's appeal be dismissed with prejudice, and that Final Judgment in favor of the Commissioner be entered.

## NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to Rule 72(a)(3) of the Local Uniform Civil Rules of the United States District Courts for the Southern District of Mississippi, any party may serve and file written objections within 14 days after being served with a copy of this Report and Recommendation. Within 7 days of the service of the objection, the opposing party must either serve and file a response or notify the District Judge that he or she does not intend to respond to the objection.

The parties are hereby notified that failure to file timely written objections to the proposed findings, conclusions, and recommendations contained within this report and recommendation, shall bar that party from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, except

upon grounds of plain error.  28 U.S.C. § 636, Fed. R. Civ. P. 72(b) (as amended, effective December 1, 2009); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996).

Respectfully submitted on July 21, 2021.

s/ LaKeysha Greer Isaac<br>UNITED STATES MAGISTRATE JUDGE